UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

STEVE P.,[1]

                      Plaintiff,

      v.

COMMISSIONER OF SOCIAL SECURITY,

                      Defendant.
_____

DECISION & ORDER

19-CV-0492MWP

**PRELIMINARY STATEMENT**

        Plaintiff Steve P. brings this action pursuant to Section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying his application for Disability Insurance Benefits ("DIB"). Pursuant to the Standing Order of the United States District Court for the Western District of New York regarding Social Security cases dated June 1, 2018, this case has been reassigned to, and the parties have consented to the disposition of this case by, the undersigned. (Docket # 20).

        Currently before the Court are the parties' motions for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. (Docket ## 11, 18). For the reasons set forth below, this Court finds that the decision of the Commissioner is supported by substantial evidence in the record and is in accordance with applicable legal standards.

---

[1] Pursuant to the November 18, 2020 Standing Order of the United States District Court for the Western District of New York regarding identification of non-governmental parties in social security opinions, the plaintiff in this matter will be identified and referenced solely by first name and last initial.

Accordingly, the Commissioner's motion for judgment on the pleadings is granted, and plaintiff's motion for judgment on the pleadings is denied.

## DISCUSSION

**I.     Standard of Review**

This Court's scope of review is limited to whether the Commissioner's determination is supported by substantial evidence in the record and whether the Commissioner applied the correct legal standards. *See Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004) ("[i]n reviewing a final decision of the Commissioner, a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision"), *reh'g granted in part and denied in part*, 416 F.3d 101 (2d Cir. 2005); *see also Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) ("it is not our function to determine *de novo* whether plaintiff is disabled[;] . . . [r]ather, we must determine whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole or are based on an erroneous legal standard") (internal citation and quotation omitted). Pursuant to 42 U.S.C. § 405(g), a district court reviewing the Commissioner's determination to deny disability benefits is directed to accept the Commissioner's findings of fact unless they are not supported by "substantial evidence." *See* 42 U.S.C. § 405(g) ("[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive"). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted).

To determine whether substantial evidence exists in the record, the court must consider the record as a whole, examining the evidence submitted by both sides, "because an

analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams ex rel. Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988). To the extent they are supported by substantial evidence, the Commissioner's findings of fact must be sustained "even where substantial evidence may support the claimant's position and despite the fact that the [c]ourt, had it heard the evidence *de novo*, might have found otherwise." *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204 (W.D.N.Y. 2005) (citing *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982), *cert. denied*, 459 U.S. 1212 (1983)).

A person is disabled for the purposes of SSI and disability benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A). In assessing whether a claimant is disabled, the ALJ must employ a five-step sequential analysis. *See Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982) (*per curiam*). The five steps are:

> (1) whether the claimant is currently engaged in substantial gainful activity;
>
> (2) if not, whether the claimant has any "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities";
>
> (3) if so, whether any of the claimant's severe impairments meets or equals one of the impairments listed in Appendix 1 of Subpart P of Part 404 of the relevant regulations (the "Listings");
>
> (4) if not, whether despite the claimant's severe impairments, the claimant retains the residual functional capacity [("RFC")] to perform [his or her] past work; and

3

>   (5)   if not, whether the claimant retains the [RFC] to perform
>         any other work that exists in significant numbers in the
>         national economy.

20 C.F.R. §§ 404.1520(a)(4)(i)-(v) & 416.920(a)(4)(i)-(v); *Berry v. Schweiker*, 675 F.2d at 467. "The claimant bears the burden of proving his or her case at steps one through four[;] . . . [a]t step five the burden shifts to the Commissioner to 'show there is other gainful work in the national economy [which] the claimant could perform.'" *Butts v. Barnhart*, 388 F.3d at 383 (quoting *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998)).

## II.    The ALJ's Decision

In his decision, the ALJ followed the required five-step analysis for evaluating disability claims. At step one of the process, the ALJ found that plaintiff had not engaged in substantial gainful activity since November 18, 2014, the amended alleged onset date. (Tr. 12-22).[2] At step two, the ALJ concluded that plaintiff had the severe impairments of degenerative disc disease post cervical discectomy and fusions, diabetes mellitus, and chronic obstructed pulmonary disease. (*Id.*). At step three, the ALJ determined that plaintiff did not have an impairment (or combination of impairments) that met or medically equaled one of the listed impairments in the Listings. (*Id.*).

The ALJ concluded that plaintiff retained the RFC to perform light work but with certain limitations. (*Id.*). Specifically, the ALJ found that plaintiff could perform work requiring him to occasionally push, pull, operate foot controls with his left leg, balance, stoop, kneel, crouch, crawl, and climb ramps or stairs, and to frequently reach with his arms, but could not perform work that would require him to climb ladders, ropes, or scaffolds, or expose him to

---

[2] The administrative transcript (Docket # 5) shall be referred to as "Tr. ___," and references thereto utilize the internal Bates-stamped pagination assigned by the parties.

pulmonary irritants or hazardous environments.  (*Id.*).  Additionally, the ALJ concluded that plaintiff's work must permit him to stand for five minutes after thirty minutes of sitting.  (*Id.*).

At steps four and five, the ALJ found that plaintiff was not capable of performing his past relevant work as a corrections officer, but that other jobs existed in significant numbers in the national economy that plaintiff could perform, such as sorter, packer, and cleaner.  (*Id.*).  Accordingly, the ALJ found that plaintiff was not disabled.  (*Id.*).

### III.  Plaintiff's Contentions

Plaintiff contends that the ALJ's determination that he is not disabled is not supported by substantial evidence and is the product of legal error.  (Docket ## 11-1; 19).  First, plaintiff argues that the ALJ failed to evaluate his headaches as an impairment at step two and that the error was not harmless because the ALJ failed to consider limitations associated with this impairment in formulating the RFC.  (Docket ## 11-1 at 15-17; 19 at 1-2 ).  Second, plaintiff contends that the ALJ erred in evaluating the medical opinion evidence of record.  (Docket ## 11-1 at 17-26; 19 at 2-7).  According to plaintiff, the ALJ failed to provide good reasons for discounting the opinions of his treating orthopedic surgeon, Dr. Cameron B. Huckell ("Huckell"), M.D.  (Docket ## 11-1 at 17-21; 19 at 2-4).  Additionally, plaintiff maintains that the ALJ improperly relied upon the stale opinion rendered by consulting physician Donna Miller ("Miller"), D.O., which resulted in an RFC based upon the ALJ's own lay opinion.  (Docket ## 11-1 at 22-26; 19 at 4-7).

**IV.    Analysis**

    **A.    The ALJ's Step-Two Determination**

I turn first to plaintiff's step-two argument. Plaintiff maintains that the ALJ erred by failing to evaluate his headaches at step two – an error that he contends was not harmless because the ALJ failed to account for limitations caused by this impairment in his RFC. (Docket ## 11-1 at 15-17; 19 at 1-2). The Commissioner responds that plaintiff's headaches were a symptom of plaintiff's cervical impairment, which was explicitly evaluated by the ALJ at step two and the remaining steps of the sequential evaluation. (Docket # 18-1 at 11-12). Upon review, I find that remand is not warranted based on the ALJ's step-two determination.

At step two of the evaluation, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 416.920(a)(4)(ii), (c). "An impairment or combination of impairments is 'not severe' when medical and other evidence establishes only a slight abnormality or a combination of slight abnormalities that would have at most a minimal effect on an individual's ability to perform basic work activities." *Jeffords v. Astrue*, 2012 WL 3860800, *3 (W.D.N.Y. 2012) (quoting *Ahern v. Astrue*, 2011 WL 1113534, *8 (E.D.N.Y. 2011)); *see also Schifano v. Astrue*, 2013 WL 2898058, *3 (W.D.N.Y. 2013) ("[a]n impairment is severe if it causes more than a *de minimus* limitation to a claimant's physical or mental ability to do basic work activities"). "[T]he mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment is not, by itself, sufficient to render a condition severe." *Taylor v. Astrue*, 32 F. Supp. 3d 253, 265 (N.D.N.Y. 2012) (quotations omitted).

Moreover, "[i]t is quite clear from the[] regulations that 'severity' is determined by the *limitations* imposed by an impairment, and not merely [by its] diagnosis." *Wahrmann v. Comm'r of Soc. Sec.*, 2014 WL 4626487, *5 (N.D.N.Y. 2014) (emphasis supplied). "The Second Circuit has held that an argument that an ALJ should have found an impairment severe is 'without merit' when the claimant 'did not furnish the ALJ with any medical evidence showing how these alleged impairments limited his ability to work.'" *Quiles v. Colvin*, 2015 WL 13729877, *11 (D. Conn. 2015) (citing *Britt v. Astrue*, 486 F. App'x 161, 163 (2d Cir. 2012) (summary order)), *report and recommendation adopted by*, 2016 WL 543102 (D. Conn. 2016); *accord Wahrmann v. Comm'r of Soc. Sec.*, 2014 WL 4626487 at *5 ("[t]he presence of an impairment is not in and of itself disabling within the meaning of the [Social Security] Act") (alterations and quotations omitted). As a general matter, any error in an "ALJ's severity assessment with regard to a given impairment is harmless . . . 'when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process.'" *Graves v. Astrue*, 2012 WL 4754740, *9 (W.D.N.Y. 2012) (alteration in original) (quoting *Zenzel v. Astrue*, 993 F. Supp. 2d 146, 153 (N.D.N.Y. 2012)).

In this case, any step-two error by the ALJ in failing to separately consider plaintiff's headache impairment was harmless because the ALJ proceeded through the sequential evaluation and explicitly considered plaintiff's headaches during the subsequent analysis. The record demonstrates that plaintiff's headaches were caused by his cervical impairment and were adequately managed with occipital nerve blocks and medication for breakthrough pain. (Tr. 744-51). After plaintiff's second cervical surgery, his headaches occurred less often. (Tr. 783). This record evidence was explicitly considered by the ALJ in formulating the RFC.

(Tr. 18). Indeed, the ALJ recognized that plaintiff claimed to suffer from headaches as a result of his cervical impairment, but concluded that the headaches decreased in frequency as a result of plaintiff's second cervical surgery. (*Id.*). Accordingly, I conclude that any error at step two was harmless. *See London v. Comm'r of Soc. Sec.*, 339 F. Supp. 3d 96, 106-107 (W.D.N.Y. 2018); *Schifano v. Astrue*, 2013 WL 2898058 at *3 ("[w]here a finding of a severe impairment is improperly omitted, the error may be deemed harmless where the disability analysis continues and the ALJ considers the omitted impairment in the RFC determination") (citing *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (summary order)).

      **B.**      **The ALJ's RFC Determination**

I turn next to plaintiff's challenge to the ALJ's RFC assessment on the grounds that he improperly discounted opinions authored by Dr. Huckell and improperly relied upon a stale opinion authored by Dr. Miller. (Docket ## 11-1 at 17-26; 19 at 2-7). I disagree.

The record demonstrates that Huckell provided treatment to plaintiff for neck, mid-back, and lower back pain beginning in 2012, after plaintiff was involved in a motor vehicle accident. (Tr. 340-44). Huckell continued to treat plaintiff's spine impairments through 2017, including treatment following another motor vehicle accident in 2014. (Tr. 239-345, 752-819). Throughout the course of his treatment, Huckell performed surgery on plaintiff's cervical spine in late 2012 and again in January 2016. (Tr. 307-11, 788-800). Although Huckell initially opined that plaintiff was temporarily disabled as a result of his spine impairments (Tr. 263, 272, 279, 304, 310, 316, 321, 326, 338, 344), beginning in June 2015 and continuing through 2017, Huckell opined that plaintiff was "permanently totally disabled as a corrections officer and he has multiple health issues that are making it difficult for him to work at all" (Tr. 242, 252, 755, 760, 765, 770, 775, 780, 786, 791, 799, 812, 818). In September 2016, Huckell further assessed

that plaintiff had achieved maximum medical improvement with respect to his spinal conditions. (Tr. 775).

In reaching his RFC determination, the ALJ considered the statements contained in Huckell's treatment notes that plaintiff was permanently disabled from work as a corrections officer and that he suffered from multiple impairments that inhibited his ability to work, but concluded that these statements were deserving of "little weight." (Tr. 19). The ALJ discounted Huckell's statements on the grounds that they were conclusory findings on issues reserved for the Commissioner and that they did not identify any functional limitations caused by plaintiff's impairments. (*Id.*). I find that the ALJ did not err in discounting Huckell's statements for the reasons he provided. *See Anthony W. v. Comm'r of Soc. Sec.*, 2021 WL 195346, \*6 (W.D.N.Y. 2021) ("the ALJ did not err in discounting [treating physician's] statements that plaintiff was unable to work and totally disabled"; "statements from a medical source on 'issues reserved to the Commissioner,' such as that a claimant is 'disabled' or 'unable to work,' do not qualify as 'medical opinions,' and are 'not give[n] any special significance'") (quoting 20 C.F.R. § 416.927(d)); *Clark v. Colvin*, 2015 WL 1458628, \*12 (W.D.N.Y. 2015) ("the opinions provided by [the treating physician] . . . were wholly conclusory, did not identify any specific limitations arising from [plaintiff's impairment] and reached a conclusion that is expressly reserved for the Commissioner; [a]s such, . . . [the ALJ] was not obligated to accord significant weigh to [the treating physician's] conclusory opinions that [plaintiff's] medical impairments prevented him from working").

In any event, although the ALJ gave Huckell's statements little weight, nothing in the RFC he assessed was inconsistent with Huckell's conclusions. (Tr. 19; Docket # 18-1 at 12). As Huckell concluded, the ALJ determined that plaintiff could not return to his past work as a

corrections officer. (Tr. 16-20). Further, after evaluating the entire record, the ALJ concluded that plaintiff's medical impairments limited his ability to engage in several work-related activities, and he formulated an RFC to account for the identified limitations. (*Id.*).

With respect to the opinion authored by Miller, the ALJ considered it and concluded that it was entitled to "some weight." (Tr. 19). Plaintiff contends that the ALJ improperly relied upon this opinion because it was authored prior to his second cervical surgery, thus rendering it stale. Again, I disagree.

The record demonstrates that Miller conducted an evaluation of plaintiff on September 18, 2015 – after plaintiff's first spinal surgery but prior to his second. (Tr. 738-41). At the time of Miller's evaluation, plaintiff reported that he suffered from chronic neck and back pain. (*Id.*). He reported pain radiating from his neck to the back of his head causing headaches. (*Id.*). He also reported pain radiating from his lower back to his left thigh, although he indicated that it was somewhat improved. (*Id.*).

Upon physical examination, plaintiff appeared to be in no acute distress, had normal gait, could walk on heels and toes without difficulty, used no assistive devices, had a normal stance and full squat, and could get on and off the examination table and rise from a chair without difficulty. (*Id.*). His musculoskeletal evaluation demonstrated limited range of motion in plaintiff's cervical and lumbar spine, but normal range of motion in his shoulders, elbows, forearms, wrists, hips, knees, and ankles. (*Id.*). The sitting straight leg raise was negative bilaterally. (*Id.*). Plaintiff's joints were stable and nontender. (*Id.*). Neurologically, plaintiff had intact sensation and full strength in his upper and lower extremities. (*Id.*). Plaintiff also had intact hand and finger dexterity and full grip strength bilaterally. (*Id.*). In Miller's view,

plaintiff's prognosis was "fair," and she assessed that plaintiff had mild to moderate limitations for heavy lifting, bending, carrying, reaching, pushing, and pulling.  (*Id.*).

Generally, "an ALJ should not rely on 'stale' opinions – that is, opinions rendered before some significant development in the claimant's medical history," *Robinson v. Berryhill*, 2018 WL 4442267, *4 (W.D.N.Y. 2018), and "[m]edical source opinions that are stale and based on an incomplete medical record may not be substantial evidence to support an ALJ['s] finding," *Davis v. Berryhill*, 2018 WL 1250019, *3 (W.D.N.Y. 2018) (alterations, citations, and quotations omitted).  That said, "a medical opinion is [not] stale merely because it pre-dates other evidence in the record, where . . . the subsequent evidence does not undermine [the opinion evidence]." *Hernandez v. Colvin*, 2017 WL 2224197, *9 (W.D.N.Y. 2017) (citing *Camille v. Colvin*, 652 F. App'x 25, 28 n.4 (2d Cir. 2016) (summary order)); *accord Morgan v. Astrue*, 2010 WL 3723992, *13 (E.D. Tenn.) ("[i]n every claim for DIB or SSI before an ALJ, some time will elapse between the date that a medical opinion about the claimant's condition is rendered and the date that the ALJ considers that opinion[;] [f]requently, new evidence about the claimant's condition will come to light during the intervening period of time[;] [t]he SSA's disability determination process would cease to function if ALJs could not rely on a medical opinion simply because some new evidence entered the record after the opinion was provided"), *report and recommendation adopted by*, 2010 WL 3723985 (E.D. Tenn. 2010).  Here, I disagree that Miller's consultative medical opinion was too old to warrant the ALJ's consideration.

In this case, plaintiff has not demonstrated that the record evidence relating to his subsequent surgery undermines Miller's medical opinion.  As referenced above, in her 2015 evaluation, Miller assessed that plaintiff complained of back pain and neck pain with associated headaches and that plaintiff was limited in his ability to engage in heavy lifting, bending,

11

carrying, reaching, pushing, and pulling.  (Tr. 738-41).  Medical evidence post-dating Miller's opinion, which the ALJ considered, does not appear to be inconsistent with or undermine Miller's assessment.

As noted above, the record demonstrates that prior to Miller's evaluation plaintiff was receiving treatment from Huckell for his ongoing neck and back pain.  (Tr. 239-345).  In May 2015, Huckell recommended that plaintiff consider another cervical surgery due to the injuries in his cervical spine following his second motor vehicle accident and his continued symptoms of pain.  (Tr. 254-63, 444-48).  At that time, plaintiff declined surgery indicating that he would like to attempt to return to work as a corrections officer.  (*Id.*).

During his continued treatment with Huckell, plaintiff described ongoing pain in his neck and back.  (Tr. 752-819).  Huckell's records reflect that in November 2015, approximately one month after Miller's evaluation, plaintiff continued to complain of neck and back pain and that more conservative treatment options did not improve his condition.  (Tr. 807).  Huckell concluded that another cervical surgery was warranted.  (*Id.*).  After the January 2016 surgery, plaintiff's condition incrementally improved, and he experienced less frequent headaches and somewhat diminished pain.  (Tr. 757, 760, 762, 772, 777, 783).

The record evidence does not demonstrate a deterioration in plaintiff's functional ability that would render Miller's assessment unreliable.  Rather, the medical records demonstrate that plaintiff's symptoms remained largely unchanged during the approximately three-month period between Miller's evaluation and his second surgery and improved slightly following his surgery.  In short, plaintiff neither points to any medical evidence suggesting that his condition deteriorated and caused disabling functional limitations after Miller's opinion, nor identifies any relevant evidence post-dating the medical opinions that the ALJ failed to consider.

For these reasons, I find that substantial evidence supports the ALJ's RFC assessment. *See*, *e.g.*, *Abate v. Comm'r of Soc. Sec.*, 2020 WL 4597315, *6 (W.D.N.Y. 2020) ("[a]lthough the record included surgery for [p]laintiff's left knee and the additional cervical impairment, such events did not render [the consulting physician's] opinion impermissibly stale[;] . . . [p]laintiff fails to show any additional limitations caused by these subsequent medical events[,] . . . [and] the ALJ considered [p]laintiff's knee impairments and cervical spine MRI in formulating her RFC determination"); *Ambrose-Lounsbury v. Saul*, 2019 WL 3859011, *3-4 (W.D.N.Y. 2019) ("[claimant] has not shown significant developments in her medical history following [consultative examiner's] opinion that render it stale[;] . . . [claimant's] only new ailment after [consultative examiner's] examination was the 'left ankle swelling'[,] . . . [b]ut the record does not evidence any limitation from that swelling that the ALJ did not account for in the RFC[,] [s]o the ankle swelling is hardly a 'significant development'"); *Sexton v. Berryhill*, 2018 WL 1835494, *7 (W.D. Okla.) (finding no error where ALJ relied on opinion evidence that was completed "before all of the medical evidence was in and [[p]laintiff] became more severe[;] . . . [h]ere, however, the opinions of the state agency physicians are relevant to the period to which they apply, and [p]laintiff does not identify any evidence of a subsequent deterioration in [p]laintiff's condition that was not reviewed and considered by the ALJ[;] [t]he ALJ expressly stated that additional evidence . . . was received and admitted into the record subsequent to the hearing and that he reviewed this evidence and considered it in his determination[;] . . . [b]ecause the ALJ independently reviewed and considered the post-2014 evidence, and [p]laintiff points to no credible evidence inconsistent with the RFC, the undersigned finds no reversible error in the ALJ's reliance on the agency physicians' opinions"), *report and recommendation adopted by*, 2018 WL 1858255 (W.D. Okla. 2018); *Morgan v. Astrue*, 2010 WL 3723992 at *13 ("[i]n this

13

case, [p]laintiff has not shown that the additional objective evidence he cites was inconsistent with the opinions of [consultative physicians][;] . . . [p]laintiff has not explained how a review of the new evidence he cites would have changed the opinions provided by [consultative physicians][;] [a]ccordingly, the [c]ourt cannot find error in the ALJ's decision to rely upon the doctors' opinions").

In view of my finding that Miller's opinion was not stale, plaintiff's argument that his RFC is unsupported by any medical opinion also fails.  (Docket ## 11-1 at 23-26; 19 at 4-7).  The ALJ's RFC finding accounts for the limitations assessed by Miller, while also crediting plaintiff's hearing testimony in assessing additional limitations.  I find that the ALJ's RFC determination is supported by medical opinion evidence and is not the product of the ALJ's own lay interpretation of the evidence.  *See O'Sullivan v. Comm'r of Soc. Sec.*, 2020 WL 1180659, *7 (W.D.N.Y. 2020) ("although the ALJ did not find that the subsequent treatment evidenced any 'notable changes or worsening,' she nonetheless considered the subsequent information and [the plaintiff's] subjective allegations when formulating the RFC[;] . . . [t]he ALJ did not err . . . by including greater limitations in her RFC determination than those opined by [the consulting physician]").

## CONCLUSION

After a careful review of the entire record, this Court finds that the Commissioner's denial of DIB was based on substantial evidence and was not erroneous as a matter of law.  Accordingly, the ALJ's decision is affirmed.  For the reasons stated above, the Commissioner's motion for judgment on the pleadings **(Docket # 18)** is **GRANTED**.  Plaintiff's

motion for judgment on the pleadings **(Docket # 11)** is **DENIED**, and plaintiff's complaint (Docket # 1) is dismissed with prejudice.

**IT IS SO ORDERED.**

                                              *s/Marian W. Payson*
                                              MARIAN W. PAYSON
                                        United States Magistrate Judge

Dated:  Rochester, New York
         January 29, 2021